121 So.2d 697 (1960)
HUNT LAND HOLDING COMPANY et al., Appellants,
v.
Norman J. SCHRAMM et al., Appellees.
No. 1490.
District Court of Appeal of Florida. Second District.
June 24, 1960.
*699 J.B. Patterson and John Huskins, Fort Lauderdale, for appellants.
Joseph Easthope, Fort Lauderdale, for appellee, Broward County.
Richard B. Austin, Tallahassee, for appellee, State Road Dept. of Florida.
McCune, Hiaasen, Kelley & Crum, Fort Lauderdale, for remaining appellees.
KANNER, Judge.
A mandatory injunction sought by and granted to the plaintiffs in the suit below required that the defendants remove a dam which they had constructed across an outfall drainage ditch. The appeal has been advanced upon the sole proposition that there was no proof of adverse user and hence there could be created no easement by prescription.
Located near the northern city limits of Fort Lauderdale, the outfall ditch in question, thirty feet wide at its east end, extends from U.S. Highway 1 on the west, thence about 1300 feet in an easterly direction to the intracoastal waterway. Coursing through the lands of both the plaintiffs and the defendants, the ditch is in township 49 south, range 43 east, between sections 12 and 13, of which the plaintiffs are subdivision developers and individual lot owners on both sides of the ditch's westerly portion, and between sections 7 and 18, of which the defendants are rival subdivision developers of both sides of the easterly portion of the ditch. The plaintiffs' property is somewhat higher than that of the defendants and has already been subdivided, the ditch being utilized for drainage. Defendants' lands, consisting largely of mangrove swamp, are to be developed when made usable by the digging of canals and the supplying of fill. The natural drainage in the area concerned is easterly and southerly into the intracoastal waterway, and in this respect the plaintiffs have the dominant estate. Passage of the ditch through the low-lying swamp lands now owned by the defendants was shown as having been necessary.
In 1929 U.S. Highway 1 was constructed, running north and south along the west side of the plaintiffs' land. A culvert six feet wide and three feet high was built by the road department under the original road bed, this having been extended to pass under the new highway when U.S. 1 was widened in 1952. At both times the road department constructed drainage ditches west and east of U.S. 1 for drainage of surface and rain waters from the north and west into the culvert, thence to the intracoastal waterway via the drainage ditch here involved. The road department has periodically cleaned the ditch and maintained it from the time U.S. 1 was constructed to the time of the instant suit. The use of the ditch is for drainage, not only of the lands surrounding it but of 320 acres of land situated to the west of U.S. 1, under which the culvert was constructed for that purpose by the road department.
Artificial at its inception, the ditch existed and functioned to provide drainage for surrounding lands in excess of forty-five years, although it was constructed at a time and under circumstances and by persons not now ascertainable. It has through the years been used without objection by anyone concerned and all have thus acquiesced in its use. Lands which it drained were used previously for farming purposes, except for those of the defendants, which were too low. This ditch was never closed but was always open to drain the area, and all earlier persons had considered it to be a permanent means of drainage.
Damming of the drainage ditch by the defendants proceeded despite the fact that *700 throughout its existence the ditch has been in open, notorious, and continuous use. This is conceded by the defendants. It is also conceded that the ditch is considered as necessary by the county commission, the county engineer, the planning and zoning board, and the county health department.
Grievance of the plaintiffs commenced when the defendants built a prior dam across the ditch, preventing drainage from plaintiffs' lands. This dam was washed out by natural causes, following which the defendants supplanted it with a permanent dam. The Broward County Health Department refused to approve building permits on plaintiffs' lands because it deemed it necessary that the ditch be kept open and maintained for sanitary and health purposes.
The chancellor found the equities to be with the plaintiffs and held their right to relief to be based upon three legal propositions, (1) the theory of "mutual drain," (2) the theory that the legal character of the artificial ditch has changed to that of a natural water course by virtue of its long use, and (3) the theory that easement by prescription has been created.
The defendants confine their appeal to a single point of whether an easement by prescription can be created without showing of adverse use. Their contention is that the evidence shows the use of the outfall ditch was not exclusive but was for the mutual benefit of all the adjoining lands and therefore not adverse, and, further, that they are favored with the presumption that the use was permissive rather than adverse. Because of this, they assert that they are entitled to prevail.
Florida has aligned herself with the more contemporary authorities whose trend is to abandon the theory that prescriptive rights are based on the presumption of a prior grant and to treat the acquisition of such prescriptive rights as having been acquired by methods substantially similar to those by which title is acquired by adverse possession. Downing v. Bird, Fla. 1958, 100 So.2d 57.
In order to establish an easement by prescription, a claimant must prove actual, continuous, uninterrupted use for a period of twenty years. In acquisition of such an easement the use must be adverse under claim of right and must either be with the knowledge of the owner or by a use so open, notorious, visible, and uninterrupted that knowledge of the use by an adverse claimant is imputed to the owner. Moreover, the use must be inconsistent with the owner's use and enjoyment of his lands and also must not be a permissive use; for the use is required to be such that the owner has a right to a legal remedy to stop it. Downing v. Bird, supra, and J.C. Vereen & Sons v. Houser, 1936, 123 Fla. 641, 167 So. 45.
There is a distinction between acquiring of title by adverse possession and the acquiring of a prescriptive right. In the former, title must be through possession. In the latter, a prescriptive right is through the use of the privilege without actual possession. In acquisition of the title by adverse possession, the possession must be exclusive, while in acquisition of a prescriptive right, the use may be in common with the owner or the public. Downing v. Bird, supra.
In either prescription or adverse possession, the use or possession is presumed to be in subordination to the title and thus is presumed to be permissive. However, the presumption of permissive use or possession is not conclusive and is ineffectual in the face of facts which cause its dissipation.
Declarations or assertions by a claimant are not essential to possession or use under claim of right; rather, the adverse character of possession or use is a question discoverable and determinable from all the circumstances of the case. *701 Stetson v. Youngquist, 1926, 76 Mont. 600, 248 P. 196.
Thus we see that the presumption of permissive use may be overcome by knowledge imputed to the owner of adverse use by the party claiming the prescriptive right, that it is not necessary that this be done by declarations or assertions but it may be effectuated by use inconsistent with the owner's use and enjoyment of his lands, and, further, that the use need not be exclusive but may be in common with the owner or the public.
Here the long, continuous, uninterrupted, open, and notorious use of the ditch for drainage of farm lands is conceded to have existed more than forty-five years without any objection until the present dispute; the use was accepted, acquiesced in, and was treated as necessary and permanent for drainage of the area through the years, up to the present time. It was improved and serviced by the state road department and has served to drain surface waters from the public highway as well as the lands involved. It was declared as necessary by the county health department, the county commission, the county engineer, and the planning and zoning board.
At the hearing for the taking of testimony the defendants offered no evidence to show that their predecessors in title had given consent to the user, but as indicated they place their reliance on the presumption that the use was permissive. We conclude that the plaintiffs proved by clear and positive evidence that the use was so continuous, uninterrupted, open, and notorious as to impute to the owners of the lands that the claimants were exercising their privilege under a claim of right adverse to the owners for the required period, and that the use was inconsistent with the rights of the owners to their use and enjoyment of the lands. By such proof the plaintiffs have surmounted the defendants' claim as to presumption that the use was permissive rather than adverse, and they are entitled to prevail.
The chancellor found the plaintiffs were entitled to relief under three supporting theories. Since the appeal is on the single point, "Can an easement by prescription be created without showing of adverse user?", we have no comment to make as to the other theories. The decree is affirmed.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.